IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AMERISOURCEBERGEN DRUG CORP. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| AMERICAN ASSOCIATED DRUGGISTS, | : | |
| INC., d/b/a/ UNITED DRUGS | : | NO. 05-5927 |

**ORDER - MEMORANDUM**

  **AND NOW**, this     day of May, upon consideration of Plaintiff's Motion to Strike Counts Two through Six of the Second Amended Counterclaim (Docket Entry # 148), Defendant's Response thereto and Alternate Motion for Leave to File Second Amended Counterclaim (Docket Entry # 150), Plaintiff's Motion for Leave to File a Reply Memorandum (Docket Entry # 151) and said Reply Memorandum, **IT IS HEREBY ORDERED** that:

  1. Plaintiff's Motion For Leave to File a Reply Memorandum is **GRANTED**.

  2. Defendant's Alternative Motion for Leave to File Second Amended Counterclaim is **DENIED**.

  2. Plaintiff's Motion to Strike Counts Two through Six of the Second Amended Counterclaim is **GRANTED**.

  On March 14, 2007, the Court entered a Memorandum and Order granting Plaintiff Amerisourcebergen Drug Corporation's ("ABDC") motion for summary judgment on Count II of Defendant American Associated Druggists, Inc.'s ("United") First Amended Counterclaim (the "FAC") alleging breach of contract for "selling against" United's managed care program. The FAC

alleged that, under the terms of the parties' Group Purchasing Agreement ("GPA"), Plaintiff ABDC was required to "promote" United's managed care program to prospective United members; instead, ABDC solicited and enticed prospective United members to sign directly with ABDC rather than United, and solicited and enticed United's existing managed care participants to leave the program in favor of ABDC's managed care program, in breach of ABDC's duty. (FAC ¶¶ 41-44.) We determined that none of the three provisions of the GPA identified by United were susceptible to a construction that ABDC was restricted from "selling against" United's managed care program.

By Order of January 5, 2007, while the summary judgment motions filed by ABDC and United against each other were pending, we granted ABDC leave to file a Second Amended Complaint to join a new defendant Cardinal Health Care. As to the claims against United, the Second Amended Complaint repeated the allegations and claims contained in ABDC's earlier pleadings. On April 2, 2007, after the Court had entered is summary judgment decision, United filed its Second Amended Counterclaim ("SAC"). In Count Two of the SAC, United reasserted the same "selling against" breach of contract claim upon which we had already granted summary judgment in favor of ABDC. It also alleged new claims for breach of the covenant of good faith and fair dealing (Count Three), tortious interference with contract and business relationships (Count Four), unfair competition (Count Five), and a cause of action it labels "prima facie tort" (Count Six), based on the same "selling against" conduct alleged in its prior pleadings. It restated the same factual allegations contained in the FAC, (SAC ¶¶ 33-42; 56-57; 65-70), and added new factual allegations concerning statements by ABDC employees admitting that ABDC acted contrary to the terms of the

GPA in "selling against" United's managed care business.  (SAC ¶¶ 49; 52-54.)[1]

In its motion to strike, ABDC argues that United did not seek leave of court before filing the SAC, as it was required to do under Fed. R. Civ. P. 15(a), and that such leave should not be granted post hoc.  We agree.  In the amended counterclaim setting, where a party is "not responding for the first time to new issues raised in the plaintiff's amended pleading, the substantially altered document is an amended pleading under the rules [of civil procedure]."  <u>Oy Tilgmann, AB v. Sport Publishing Int'l., Inc.</u>, 110 F.R.D. 68-70 (E.D. Pa. 1986).  ABDC's Second Amended Complaint added claims only against Cardinal, not United.  Accordingly, we must treat United's SAC as an amended pleading.

> Under Rule 15(a):
>
> A party may amend his pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, he may so amend it at any time within 20 days after it is served.  Otherwise a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires . . . .[2]

We find that the SAC, by adding four new causes of action, constituted a substantial alteration to United's previous pleading.  United was, thus, required to obtain leave of court or the written consent of ABDC to file the new claims.  Since neither leave nor consent was obtained, we find that this

---

[1] We note that the new allegations are somewhat contradictory.  United asserts that ABDC employee Rich Hazinski testified that ABDC instructed its employees *not* to offer a better cost of goods to United members as an incentive to leave United. (SAC ¶ 49.)  However, United also asserts that ABDC *did* offer the pharmacy owners financial incentives to leave United.  (SAC ¶¶ 52, 53.)

[2] Fed. R. Civ. P. 13(f) similarly provides that when a party "fails to set up a counterclaim through oversight, inadvertence, or excusable neglect, or when justice requires, the pleader may by leave of court set up the counterclaim by amendment."  Under this Rule, United would still have been required to seek leave before filing the SAC.

pleading was filed in violation of the Federal Rules of Civil Procedure.

Where an unapproved amendment will prejudice the counterclaim defendant, decisions from this District have held that the amended pleading should be stricken. In Tilgmann, Judge Kelly determined that a plaintiff would suffer substantial prejudice due to the amended pleading because substantial discovery had already taken place, the discovery deadline had expired, and permitting discovery to be reopened would result in having to "repeat discovery at considerable time and expense." Id. at 70-71. Judge Kelly also cited the plaintiff's "strong interest in resolving this case as soon as possible" and the prejudice it would suffer by the substantial delay. Id. at 71. Although reciting that Rule 15(a) requires leave to be freely given "when justice so requires," Judge Kelly declined to grant such leave where the defendants had not offered any substantive justification for their motion. Id.

Similarly, in Regent Nat'l Bank v. Dealer's Choice Automotive Planning, Inc., Civ. A. No. 96-7930, 1998 WL 961377 (E.D. Pa. Dec. 15, 1998), Judge Hutton determined that, when a party substantially changes its answer and counterclaim so that the scope of the response greatly exceeds that of the amended complaint, and thereby causes prejudice to the Plaintiff by necessitating additional discovery, expense, and delay of the trial or eventual resolution of the matter, leave should not be granted. Id. at *4. Judge Hutton found that the plaintiff would be prejudiced by the late amendment because discovery had already been extended numerous times and summary judgment practice had already commenced when the defendants filed their answer to the amended complaint and included the new counterclaims.

Here, when the SAC was filed, summary judgment practice had not only started, it had been completed. We find that United has offered no justification for its failure to timely file its new

claims and that prejudice will result should we permit it to file them now.  Significant to our consideration is that the factual basis for United's new claims were clearly known to United for a significant period of time and that United delayed presenting its new claims until after the Court had determined that the original breach of contract claim was defective.  United offers no explanation why it was unable to raise its new causes of action earlier, raising the inference that it chose to take a "wait and see" approach to how the Court would determine the pending summary judgment motions.  See Cureton v. NCAA, 252 F.3d 267, 273 (3d Cir. 2001) ("When a party delays making a motion to amend until after summary judgment has been granted to the adverse party, other courts have recognized that the interests in judicial economy and finality of litigation may become particularly compelling.")  Only after we determined that its "selling against" breach of contract theory was improper, did United seek to reassert the same factual basis to support new claims under different theories.  This inference is clearly supported by the SAC, which states the same factual basis for the four new tort claims that supported the now adjudicated "selling against" contract claim.  Should more proof be needed, United itself has supplied it in responding to the instant motion.  United concedes that its new claims are based on the same general conduct alleged in the First Amended Counterclaim.  (See Def. Mem. at 8.)

     We also find that the late amendment will prejudice ABDC due to the extensive additional discovery that such an amendment would engender.  "Substantial or undue prejudice to the non-moving party is a sufficient ground for denial of leave to amend."  Cureton, 252 F.3d at 273.  "The issue of prejudice requires that we focus on the hardship to the defendants if the amendment were permitted."  Id. (citing Adams v. Gould Inc., 739 F.2d 858, 868 (3d Cir. 1984)).  In making the determination, we considered whether allowing an amendment would result in additional

discovery, cost, and preparation to defend against new facts or new theories.  Compare Adams, 739 F.2d at 869 (finding no prejudice because no new facts or additional discovery were required); with Rolo v. City Investing Co. Liquidating Trust, 155 F.3d 644, 655 (3d Cir. 1998) (finding duration of case and substantial effort and expense in resolving underlying motion to dismiss could constitute undue delay or prejudice to defendants); and Cornell & Co., Inc. v. Occupational Safety & Health Review Comm'n., 573 F.2d 820, 824 (3d Cir. 1978) (finding significant prejudice because proposed amendment changed legal and factual basis of claim and prevented defendant from presenting defense).

      While the old and new claims are related, the original "selling against" breach of contract claim focused discovery on the actions of ABDC.  The new tortious interference claim, for example, would focus discovery on affected business relationships between United and each of its eight hundred member pharmacies.  Conducting discovery on that scale would clearly prejudice ABDC and prolong the eventual resolution of this matter.  The elements of the other tort claims also require additional discovery beyond that conducted to defend the original contract claim.  Accordingly, we conclude that the SAC must be stricken.

      BY THE COURT:

      /s/ John R. Padova

      _____
      John R. Padova, J.